UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAKAN KIP KENNEDY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COLUMBUS MANUFACTURING, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-03379-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 14 |

## I. INTRODUCTION

*Pro se* plaintiff Hakan Kip Kennedy brought this employment discrimination action alleging violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Equal Pay Act of 1963 ("EPA"). Defendants are his former employer Columbus Manufacturing, Inc. ("Columbus") and its Vice President of Human Resources Andrea Wilson. Before this Court is Defendants' Motion to Dismiss under Rule 12(b)(6).

For the reasons below, the Court dismisses the Title VII and EPA claims with prejudice. The motion is denied as to the ADA and ADEA claims.

## II. FACTUAL & PROCEDURAL BACKGROUND

Kennedy alleges the following:

Kennedy worked for Columbus from January 9, 2012, to October 12, 2015. Docket No. 1 ("Compl."), Attach. 1, at 5. In September 2013, Kennedy contacted Columbus regarding safety concerns and notified them of his workplace injury. *See id.* Some months later, Kennedy began working part time and subsequently took medical leave. *See id.* After Kennedy rejected several

severance offers from Columbus in 2014 and 2015, Columbus informed Kennedy that his employment would be terminated effective October 12, 2015, whether or not he agreed to severance. *See id.* In need of money, Kennedy signed a severance agreement on October 20, 2015. *See id.* October 20, 2015, is the last day on which discriminatory acts took place. *See* Compl. at 4.

On June 27, 2016, Kennedy filled out and mailed to the EEOC an EEOC Intake Questionnaire, which the EEOC received three days later on June 30, 2016. *See* Docket No. 26 ("Opp."), Ex. A. The Intake Questionnaire alleged that Kennedy's termination was the result of retaliation for reporting safety concerns and discrimination based on age and disability, violating the ADA and ADEA. The Questionnaire was not signed under penalty of perjury or otherwise verified. *See id.*; *cf.* 29 C.F.R. § 1601.9 (verification required for Title VII and ADA charges).

On February 12, 2017, Kennedy filled out and mailed to the EEOC a Charge of Discrimination form. *See* Compl., Attach. 1, at 4-5. The Charge alleged that Kennedy's termination, performance reviews, and compensation were the result of retaliation for reporting safety concerns and discrimination based on age, disability, ethnicity, and national origin, violating Title VII, the ADA, and the ADEA. *See id.* The Charge also alleged that his compensation was the result of discrimination based on sex, violating the EPA. *See id.* The EEOC received the form, which Kennedy signed under penalty of perjury, on February 22, 2017. *See id.* at 4.

The EEOC mailed to Kennedy a "right to sue" letter, which he received on March 15, 2017. *See* Compl. at 5. He filed suit in this Court on June 5, 2017, attaching the Charge of Discrimination and alleging retaliation and discrimination based on age, disability, race, and ethnicity. *See* Compl. at 4.

Defendants subsequently filed the instant Motion to Dismiss. Docket No. 14 ("Mot.").

### III. THE MOTION

Defendants argue that the Court should dismiss the Title VII, ADA, and ADEA claims because Kennedy failed to exhaust his administrative remedies. Mot. at 5-6. They argue that exhaustion required Kennedy to file a timely charge with the EEOC, which he failed to do. *Id.*

2

Specifically, the 481-day gap between the last alleged discriminatory act (October 20, 2015) and the EEOC Charge of Discrimination (February 12, 2017) exceeds the 300-day filing period permitted by these statutes. *Id.* Kennedy's Opposition clarifies that he actually filed an EEOC charge on June 27, 2016, referring to the Intake Questionnaire, placing the charge inside the filing period. Opp. at 3. This clarification is backed by documentation showing EEOC's receipt of the Questionnaire on June 30, 2016. Opp., Ex. A, at 1-2.

Defendants also argue that the Court should dismiss Kennedy's EPA claim, because the EPA only prohibits unequal pay based on gender, whereas Kennedy alleged unequal pay based on ethnicity. Mot. at 6. Kennedy's Opposition denies (incorrectly) that his Complaint included an EPA claim. Opp. at 3.

## IV. DISCUSSION

To file suit for a Title VII, ADA, or ADEA claim, a plaintiff must first timely file a charge of employment discrimination with the EEOC. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974) (describing requirements for Title VII claims under 42 U.S.C. § 2000e-5); 42 U.S.C. § 12117 (ADA and Title VII claims have the same relevant requirements.); 29 U.S.C. § 626(d)(1) (Charge periods for ADEA and Title VII are the same.). To be timely, the charge must be filed with the EEOC within the applicable charge period, which runs from the date of the discriminatory act. The default charge period is 180 days. 42 U.S.C. § 2000e-5(e)(1). However, the charge period is 300 days in states having an agency empowered to grant or seek relief for unlawful employment practices, provided the plaintiff first files with that agency. *Id.* California's Department of Fair Employment and Housing ("DFEH") is such an agency. *See Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1476-77 (9th Cir. 1989); *see also* 29 C.F.R. § 1601.74. Whatever the length of the charge period, the period is "subject to . . . equitable doctrines, such as waiver, estoppel, and tolling," though such doctrines are to be applied "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102, 113 (2002). A separate charge period applies for and runs from each discrete discriminatory act. *Id.* at 113.

This case presents two issues: First, does a timely, unverified Intake Questionnaire qualify as an EEOC charge for exhaustion purposes, where it is follow by an untimely, verified Charge of

3

Discrimination? Second, is a Title VII claim that first appears in an untimely Charge of Discrimination nonetheless actionable? For the reasons below, the Court concludes that the Questionnaire is an EEOC charge, and the Title VII claim is time-barred.

A. <u>The Intake Questionnaire Qualifies as a Charge</u>

Kennedy filed both an Intake Questionnaire and a Charge of Discrimination with the EEOC. Kennedy signed the Charge of Discrimination on February 12, 2017, and the EEOC received it on February 22, 2017.[1] The Charge was therefore filed more than 300 days after the last alleged discriminatory act on October 20, 2017, and is untimely. The key issue then becomes whether Kennedy's Intake Questionnaire constitutes a timely charge.

An EEOC Intake Questionnaire may qualify as a charge for exhaustion purposes. In *Federal Express Corp. v. Holowecki*, the Supreme Court held that an EEOC Intake Questionnaire—indeed any filing with the EEOC—constitutes a charge where it meets two requirements. 552 U.S. 389, 402 (2008). First, the filing must provide "the information required by the regulations, *i.e.*, an allegation and the name of the charged party." *Id.* Second, the filing must be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.*

Here, aside from being unverified (discussed below), Kennedy's Intake Questionnaire supplies the information required by 29 C.F.R. §§ 1601.7-.9, .12 (ADA requirements), 1626.6, .8 (ADEA requirements). For example, the Questionnaire provided a statement of facts, whether Kennedy had filed a complaint with another agency, Kennedy's name, address, and telephone number, as well as the Defendants' names, address, and approximate number of employees. *See* Opp., Ex. A. In addition to these details, the Questionnaire is "reasonably construed as a request for the [EEOC] to take remedial action." *Holowecki*, 552 U.S. at 402. For example, Kennedy checked a box labeled Box 2 stating, "I want to file a charge of discrimination," and authorizing the EEOC to "give the employer . . . information about the charge." Opp., Ex. A. This evidences

---

[1] Note that ADA and ADEA charges have different effective filing dates. 29 C.F.R. §§ 1601.13(a)(2), (a)(4)(ii)(A) (Title VII and ADA charges are deemed filed on date of receipt by EEOC.), 1626.7(b) (ADEA charges' effective filing dates vary by circumstance.).

4

Kennedy's intent to file a charge and thereby request the EEOC's aid, especially since it is unlikely that Kennedy would authorize EEOC's release of the information to Defendants otherwise. In addition, the authorization for the EEOC to give the employer information about "the charge" contemplates that the Questionnaire *is* a charge. The other option available to Kennedy was Box 1, which stated, "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking *this* box, I have not filed a charge with the EEOC." *Id.* (emphasis added). In contrast to Box 1 which evidences a desire not to have the EEOC take remedied action, Box 2 evidences an intent to file and request EEOC action. Thus, Kennedy's Intake Questionnaire constitutes a charge for purposes of administrative exhaustion.

*Holowecki*'s definition of charges under the ADEA extends to Title VII and ADA charges even though ADEA charges differ in some respects from Title VII and ADA charges. 552 U.S. at 393. *Holowecki* contemplates the possibility that its standard for charges applies beyond the ADEA. *See id.* (acknowledging that, "the EEOC forms and the same definition of charge apply in more than one type of discrimination case"). In addition, the section of the EEOC's internal Compliance Manual on which *Holowecki* relied in part, *see id.* at 398, applies equally to Title VII, ADA, and ADEA charges. *See* EEOC Compliance Manual § 2.2(b), 2006 WL 4672918. Likewise, the U.S. *amicus* brief in *Holowecki*, on which the Supreme Court relied, contemplated the extension of the Supreme Court's decision to the Title VII and ADA contexts. Brief for the United States of America as Amicus Curiae Supporting Respondents, *Holowecki*, 552 U.S. 389, 2007 WL 2808461. Finally, numerous courts have held that *Holowecki* extends to Title VII and the ADA. *See, e.g.*, *Stewart v. SEIU United Healthcare Workers-West*, No. C 11-04438 JSW, 2012 WL 1357633, at *3 (N.D. Cal. Apr. 17, 2012) (extending *Holowecki* to ADA context); *Radentz v. Am. Ass'n of Physician Specialists, Inc.*, No. EDCV1301486SJOOPX, 2014 WL 12601013, at *3 (C. D. Cal. Aug. 18, 2014) (same for Title VII context); *Hasktn v. US Airways*, No. 214CV02901SVWJEM, 2015 WL 13357437, at *5 (C.D. Cal. Apr. 9, 2015); *Bernhardt v. State of Cal. Dep't of Corr. & Rehab.*, No. 2:13-CV-01380-KJM-AC, 2015 WL 2003096, at *8 (E.D. Cal. Apr. 29, 2015). Nothing in the text of the statute or regulations or in policy precludes the application of *Holowecki* to Title VII and the ADA.

United States District Court
For the Northern District of California

Defendants argue that the Intake Questionnaire is not a charge because it is not verified (*i.e.*, signed under penalty of perjury, or sworn to before a notary public or other authorized official), as required by 29 C.F.R. § 1601.9. Docket No. 39 ("Reply"), at 2-3. While it is true that the Questionnaire is not verified, that is not fatal to its status as a charge. The Questionnaire alleged ADA and ADEA violations. ADEA charges are not subject to § 1601.9's verification requirement. *See* 29 C.F.R. § 1601.1 (Sections 1601.1-.93 apply to Title VII, the ADA, and the unrelated Genetic Information Nondiscrimination Act, not the ADEA.). And while ADA charges, like Title VII charges, must be verified, "charge[s] may be amended to cure technical defects or omissions, including failure to verify the charge." 29 C.F.R. § 1601.12(b). Furthermore, "[s]uch amendments . . . will relate back to the date the charge was first received." *Id.*; *see also McWilliams v. Latah Sanitation, Inc.*, 149 Fed. Appx. 588, 589-90 (9th Cir. 2005) (An untimely supplemental verification relates back to the original charge, and such verification may be provided at any time.). Here, Kennedy filed a verified Charge of Discrimination after he filed his unverified Questionnaire. The Charge of Discrimination included the Questionnaire's allegations and may be treated as an amendment curing the Questionnaire's lack of verification under § 1601.12(b).

Defendants also argue that even if the Intake Questionnaire were a charge, it is untimely. Specifically, they contend that the Questionnaire's applicable charge period is 180 days, not 300 days. They correctly note that the 300-day charge period is available only if a plaintiff files a charge with a state agency before he files a charge with the EEOC. Reply at 3 (citing 42 U.S.C. § 2000e-5(e)(1)). Although Kennedy does not appear to have filed anything with the California DFEH, the applicable charge period is 300, not 180, days. This is because the EEOC has a workshare agreement with the California DFEH, as it does with many other state agencies.[2]

---

[2] The Court takes judicial notice of the 2016 workshare agreement available on the DFEH's website. The Court may take judicial notice of the agreement because it is a public government record that is not subject to reasonable dispute. Fed. R. Evid. 201(b); *see also LaNier v. United States*, No. 15-cv-00360-BAS-BLM, 2017 WL 4244621, at *3 n.2 (S.D. Cal. Sept. 25, 2017) (taking judicial notice of the EEOC-DFEH workshare agreement from various years); *Saling v. Royal*, No. 2:13–cv–1039–TLN–EFB PS, 2015 WL 5255367, at *9 n.5 (E.D. Cal. Sept. 9, 2015) (same); *Hause v. The Salvation Army*, No. CV 07-5249 CAS (CWx), 2007 WL 4219450, at *1 n.2 (C.D. Cal. Nov. 27, 2007) (same). When questioned about the workshare agreement at the motion

Under this agreement, "the EEOC and the FEPA [fair employment practices agency] each designate the other as its agent for the purpose of receiving and drafting charges . . . . The EEOC's receipt of such charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA . . . ." Workshare Agreement, *supra* note 2, at 2; *see also E.E.O.C. v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) (discussing workshare agreements).[3] As a result, when Kennedy filed his Questionnaire with the EEOC, he effectively filed it simultaneously with the DFEH, and this triggered the 300-day charge period.[4] The Intake Questionnaire was therefore timely.

At the motions hearing, Defendants maintained that the existence of the workshare agreement is insufficient. Instead, they argued that the Questionnaire cannot be considered filed with the DEFH unless the EEOC actually forwarded it to the state agency, which Kennedy does not allege EEOC did. This argument is contradicted by Ninth Circuit precedent. In *Williams v. Owens-Illinois, Inc.*, the court held that the plaintiff Williams was entitled to the 300-day charge period. 665 F.2d 918, 923 n.2 (9th Cir. 1982). Like Kennedy, Williams had filed a charge with the EEOC only and neither the plaintiff nor the EEOC had forwarded the charge to the state agency. The Ninth Circuit noted that the EEOC had undertaken to forward all relevant charges to state agencies, *id.* (citing 29 C.F.R. § 1601.13), and that if the EEOC fails to forward the charge, "[t]he complainant is not to be prejudiced by the EEOC's failure to fulfill its duty." *Id.* at 923 n.2.

---

hearing, Defendants did not deny its existence or content. *See* Fed. R. Evid. 201(e). Kennedy also did not deny its existence or content. The agreement is available at https://www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/06/WorksharingAgreementFFY2016Modified.pdf ("Workshare Agreement").

[3] Under the workshare agreement, the EEOC's receipt of charges initiates the proceedings of the DFEH "for the purposes of Section 706 (c) and (e) (1) of Title VII," Workshare Agreement, *supra* note 2, at 2, but this also initiates DFEH proceedings for ADA claims. *See Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1241 (9th Cir. 2010); 29 C.F.R. § 1626.10(c).

[4] A further argument might be made that, because the EEOC may not process a charge filed with a state agency until 60 days after that filing, *see* 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(a)(3)(ii), the EEOC charge period is actually 240 days. *See id.* at § 1601.13(b)(1). *See generally Mohasco Corp. v. Silver*, 447 U.S. 807 (1980). However, the workshare agreement waives the DFEH's 60-day exclusive jurisdiction. *See* Workshare Agreement, *supra* note 2, at 3; *see also* 29 C.F.R. § 1601.13(a)(3)(iii) ("A FEP agency may waive its right to the period of exclusive processing of charges . . . ."). This restores the 300-day charge period. *See id.* at § 1601.13(a)(4)(ii)(A).

A contrary assertion contradicts the plain language of the workshare agreement and related regulations. *See* Workshare Agreement, *supra* note 2, at 2; 29 C.F.R. §§ 1601.13(a)(4)(ii)(A), 1626.10(c) ("Charges received by one agency under the [workshare] agreement shall be deemed received by the other agency . . . ."). Finally, the case that Defendants cited at the hearing as support for their argument, *Flores v. Merced Irrigation Dist.*, 758 F. Supp. 2d 986 (E.D. Cal. 2010), nowhere holds or implies that actual forwarding is required to trigger the 300-day requirement. Instead, it held that "[i]n enacting Title VII, Congress intended the statute's procedural requirements to be liberally construed in order to . . . preserve a claimant's federal remedies in discrimination suits." *Id.* at 993. The EEOC's workshare agreement with the DFEH therefore operated to constructively file Kennedy's charge with the DFEH upon receipt by the EEOC. The 300-day charge period applies.

Because Kennedy's Intake Questionnaire was a timely charge, verified by amendment under 29 C.F.R. § 1601.12(b), Kennedy exhausted his administrative remedies for claims alleged in the Questionnaire, namely the ADA and ADEA claims.

B.   The Title VII Claim Is Time-Barred

Although Kennedy's Questionnaire was a timely charge, the Questionnaire did not contain his Title VII claim of discrimination based on race and ethnicity. Instead, this claim first appeared in Kennedy's untimely Charge of Discrimination. There are two paths by which an uncharged claim might nonetheless survive.

First, an untimely or uncharged claim survives if it "reasonably relate[s]" to a timely charge. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004). A claim "reasonably relate[s]" to a timely charge, where it falls "within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Id.* In confronting this issue, courts consider the extent to which the untimely claims "are consistent with the plaintiff's original theory of the case, as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (internal quotation marks and citation omitted).

Here, the factual allegations in Kennedy's Questionnaire are limited. In the substantive

8

portions of the Questionnaire, he checked boxes for retaliation, age discrimination, and disability discrimination. In addition, Kennedy explained that he believed he had been discriminated and retaliated against because he had been terminated while on medical leave after reporting a work injury. The only allegations relevant to Kennedy's Title VII claim are that he is white, of Turkish origin, and not Hispanic or Latino. Opp. Ex. A. But this information appears in a standard, fill-in-the-blank portion of the Questionnaire that every complainant must complete; it is not specific to Title VII claims. *See id.*

A reasonable EEOC investigation based on this Questionnaire would not have uncovered Kennedy's Title VII claim. Title VII, the ADA, and the ADEA are distinct statutory schemes, and the evidence required to prove a violation of each differ significantly. An EEOC investigator probing a potential ADA violation would inquire about, *e.g.*, the existence and kind of disability at issue, the availability of accommodations, and the requirements of the complainant's occupation. Such an investigator would have no cause to inquire into the race or ethnicity of employees generally and race- or ethnicity-based differential treatment. Similarly, an investigator considering a potential ADEA violation would inquire about, *e.g.*, the age range of employees and age-based differential treatment, and would have no occasion to investigate race or ethnicity discrimination. The investigation into, *e.g.*, comparators, differs between a race discrimination and an age discrimination case. *See Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 271 (9th Cir. 1981) (sex and national origin discrimination claims not reasonably related to claims of race, color, and religious discrimination). *Id.*

A second path by which an untimely claim might survive is if it constitutes an amendment to a timely charge under 29 C.F.R. § 1601.12(b). Under this provision, plaintiffs may amend charges "to clarify and amplify allegations" or to "alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). Such amendments relate back to the charge's filing date. *Id.*

However, an untimely claim cannot relate back to a timely claim where the two claims arise from distinct statutory schemes. In *Pejic v. Hughes Helicopters, Inc.*, the plaintiff had timely filed a Title VII charge. 840 F.2d 667, 675 (9th Cir. 1988). He had then added an untimely

9

ADEA claim, asserting that the ADEA claim arose from the timely charge's subject matter and was therefore a proper amendment. *Id.* The court held against him, reasoning that "Title VII and ADEA claims arise from entirely distinct statutory schemes. Pejic's original charge contained no hint of age discrimination. His ADEA claim should be time-barred." *Id.*; *see also Bower v. City and County of San Francisco*, 490 Fed. Appx. 854, 856 (9th Cir. 2012) (Title VII claims did not relate back to timely ADA charge, because Title VII and ADA are distinct statutory schemes.). Here, Kennedy's timely Questionnaire contained only ADA and ADEA claims, with his Title VII claim first appearing in his Charge of Discrimination. Even treating the Charge as an amendment to the Questionnaire under 29 C.F.R. § 1601.12(b), his Title VII claim cannot relate back to his ADA and ADEA claims under *Pejic* and *Bower*. As a result, Kennedy's Title VII claim also does not survive as an amendment to his timely Questionnaire.

Kennedy's untimely Title VII claim is neither reasonably related to his timely charged claims nor an amendment to them. His Title VII claim is therefore time-barred.

C.    Kennedy Has Abandoned His EPA Claim

Although Kennedy's complaint included a claim of pay discrimination under the Equal Pay Act, Kennedy has failed to defend that claim. *See* Opp. at 3 ("[The Complaint] doesn't include the EPA claim or refer to EPA law . . . ."). Moreover, Kennedy has alleged only pay disparity based on ethnicity. *See* Compl., Attach. 1, at 6 (". . . a Hispanic Quality Assurance Manager, Raul Tejocote, was compensated more than me. . . . The other manager . . . *he* had a lower pay grade than mine but was paid more than me. Hispanic employees were always being favored . . . ." (emphasis added)). The EPA only prohibits pay disparity based on sex. *See* 29 U.S.C. § 206(d)(1). The Court therefore dismisses Kennedy's EPA claim with prejudice. To the extent that Kennedy's claim of pay disparity is a Title VII claim, it is time-barred per the discussion above.

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, the Court dismisses Kennedy's Title VII and EPA claims with prejudice. The motion is denied as to Kennedy's ADA and ADEA claims.

This order disposes of Docket No. 14.

**IT IS SO ORDERED**.

Dated: October 18, 2017

_____
EDWARD M. CHEN
United States District Judge