1  Your name: HAKAN KIP KENNEDY

2  Address: 11812 LAKE BLVD, TRINITY, FL 34655

3

4  Phone Number: (727)221-8134

5  E-mail Address: kiphkennedy@gmail.com

6  Pro se

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11          Division *[check one]*: ✓ San Francisco ☐ Oakland ☐ San Jose ☐ Eureka

12

13

14     HAKAN KIP KENNEDY            )   Case Number: 17-CV-03379-EMC
                                    )
15                                  )
16          Plaintiff,             )   **PLAINTIFF'S MEMORANDUM IN**
                                    )
17              vs.                 )   **SUPPORT OF PLAINTIFF'S OPPOSITION**
                                    )
18                                  )   **TO DEFENDANT'S MOTION FOR**
19     COLUMBUS MANUFACTURING, INC. )   **SUMMARY JUDGMENT**
                                    )
20          Defendant.             )   DATE: March 15, 2018
                                    )
21                                  )   TIME: 1:30 p.m.
                                    )
22                                  )
23                                  )   JUDGE:  Hon. EDWARD M. CHEN
                                    )
24                                  )   Dept:    Ctrm 5-17th Floor
                                    )
25                                  )
                                    )
26                                  )
                                    )
27                                  )
                                    )
28                                  )

# TABLE OF CONTENTS          Page(s)

**I. INTRODUCTION**      4

**II. FACTUAL BACKGROUND**

  A. Plaintiff's Declaration (Facts)      5

  B. Columbus Manufacturing Closes its South San Francisco Facility

    and transfers all managers to new facility except Plaintiff.      12

  C. Plaintiff rejects all agreements presented by Defendant until October 20, 2015.

    Defendant bargains in bad faith and refuses to negotiate Plaintiff's terms.      13

  D. Defendant uses Plaintiff's health weaknesses against him by presenting

    Severance agreements during medical leave, ignores Plaintiff's

    requests to postpone negotiations      14

  E. Plaintiff involuntarily signs Final Severance agreement in October

    2015 under economic duress, undue influence, and

    Misrepresentation (fraud).      17


**III. ARGUMENT**

  A. Legal Standard      20

  B. "Ratification" Does Not Bar Plaintiff I From Challenging the

    Enforceability of the Agreement      20

  C. Plaintiff's Consent Was Given Under Economic Duress      21

  D. Plaintiff's Consent Was Procured by Undue Influence      24

  E. The Agreement is Invalid Due to Fraud      25


**IV. CONCLUSION**      26

**TABLE OF AUTHORITIES**

Page(s)

*Johnson v. Int'l Bus. Machs.,* 891 F. Supp. 522,528 (N.D. Cal 1995)      21

*Reed v. Callahan,* 885 F.2d 1180, 1184(9<sup>th</sup>Cir. 1989)      21

*Chan, supra,* 188 Cal.App.4th at pp. 1173–1174      22

*Oubre v. Entergy Operations, Inc*      20

*Alvarado Community Hospital v. Sup. Court,*      21

(Rich & Whillock, Inc., supra, 157 Cal.App.3d at p. 1158.)      23


**Statutes**

Civil Code sections 1693      20


**Other Authorities**

Americans with Disability Act of 1990(ADA)      4

Age Discrimination in Employment Act of 1961(ADEA)      4

CACI No. 333      22

CACI No. 334      24

# I.     __INTRODUCTION AND SUMMARY OF ARGUMENT__

Plaintiff argues that "Ratification" does not bar Plaintiff from challenging the enforceability of the severance agreement. Defendant has not and cannot establish that Plaintiff is barred from challenging the enforceability of the severance agreement. This Court, in equity and under California statutory law, is certainly able to assess the enforceability of the agreement

Plaintiff argues that the agreement is invalid due to economic duress. Under California Law, economic duress can serve as basis for invaliding a release or waiver. Furthermore Plaintiff satisfies the requirement for Economic Duress that (1) Defendant Engaged in A Sufficiently Coercive Wrongful Act, (2)A Reasonably Prudent Person in Plaintiff's Position Would Have Had no Reasonable Alternative But to Consent, (3)Defendant Knew of Plaintiff's Economic Vulnerability, (4)Plaintiff Would Not Have consented to the Contract without Defendant's Wrongful Act

Plaintiff argues that the agreement is invalid due to undue influence under the criteria that Defendant used: (1) Employer/employee relationship of trust and confidence as an authority over Plaintiff, (2) Plaintiff's weakness of mind during medical leave (3) Plaintiff's financial needs or distress (4) Defendant induced or pressured Plaintiff into consenting to the contract; Plaintiff would not otherwise have consented to the contract.

Plaintiff argues that the agreement is invalid due to fraud as the termination reason of the Plaintiff was misrepresented like some other facts. Plaintiff has proven by facts that Plaintiff was wrongfully terminated during medical leave due to discrimination not due to facility closure

Plaintiff filed this lawsuit due to the violations of the Americans with Disability Act of 1990(ADA) and the Age Discrimination in Employment Act of 1961(ADEA). Both claims are proper and valid due to the illegal and unethical acts of the Defendant as below: (1)Defendant (Employer) terminated the Plaintiff (employee) during his medical leave in less than one year of medical leave due to his disability instead of accommodating the Plaintiff. (2)Defendant permanently hired other younger employees, before Plaintiff's termination, to do his job during his medical leave. (3) Due to resignation of other facility QA manager; a job became vacant which Plaintiff was highly interested on late 2013; but this job was secretly given to another younger employee with less experience and without following proper job posting and selection rules

## II.    FACTUAL BACKGROUND

**A. Plaintiff's Declaration (Facts)**

Upon receiving a "Right to Sue" letter from EEOC, I (Plaintiff) have filed a civil court case on June 5, 2017 in order to recover compensatory damages and to receive punitive damages from Columbus Manufacturing, Inc.(Defendant); due to wrongful termination and employment discrimination by Defendant. I started working for Columbus Manufacturing on January 2011 as a Quality Assurance Manager II (Senior QA Manager). I had a work injury on August 30, 2013 which was caused by a malfunctioned automatic roll-up door closing on me in front of Plant Manager, Tom Widner. After a short time of notifications of work injury; during a confidential meeting on November 21, 2013, Defendant informed me of the facility closure in 36 months (Plntff Decl., par. 3 and Ex.-1). The email from Andrea Wilson (Defendant) confirmed the verbal information given on November 21, 2013 meeting regarding 36 months duration of plans related to facility and personnel (Plaintiff's Declaration, paragraph 3 and Exhibit-14).

Almost after 6 months of the confidential meeting, Andrea Wilson (Defendant) presented me a severance agreement on May 2014(Plntff Decl., par.4, Ex.-2) in order to terminate me on August 2015. I also have noticed on the last page of the agreement that I was the only manager from South San Francisco facility to be laid off and Defendant planned transferring all managerial employees to this new facility except me as the Plaintiff (Plntff Decl., par. 4, Ex.-2). The Defendant ironically called their action on me (Plaintiff) as a "Lay-off due to San Francisco facility closure". Per Severance Agreement, all South San Francisco facility managers (Plntff Decl., par. 5, Ex.-3), were all transferred with the same job titles to new Hayward facility during summer 2015. Columbus Manufacturing built and opened a new facility at Hayward, CA on 2015 with $28 million investment (Plntf Decl.,par.6,Ex.-4).I rejected this Severance Agreement on June 19,2014(Plntf Decl.,par.7,Ex.-5).

By August 30, 2014, I officially started my medical leave due to immediate medical treatment needs and disability arisen by work injury. While I was on medical leave, Ms. Wilson planned to terminate me even before the South San Francisco closure date of June 2015 as the separation agreement document from early 2015; clearly showed the termination date planned as March 01, 2015 and Ms. Wilson's signature date as February xx, 2015(Plntff. Decl., par.8, Ex.-6). I

1  had also noticed that my employee network account was already terminated before May 01,

2  2015(Plntff. Decl., par.9, Ex.-7). On February 4, 2015 I informed Ms. Wilson that I was ready to

3  negotiate the terms of Severance agreement based on Ileana's early January 2015 communication to

4  me regarding Ms. Wilson's interest to discuss the severance agreement (Plaintiff Decl., paragraph 10

5  and Exhibit-8). Later that day, Ms. Wilson (Defendant) inquired if I was able to meet in person or on

6  the phone to discuss the agreement, to which I replied that we could communicate through e-mail

7  (Plntff Decl., par.10, Ex.-8). But, on February 10, 2015, Ms. Wilson emailed me insisting to talk on

8  the phone to discuss the severance agreement. Ms. Wilson also provided me with an update on the

9  status of the Forbes Plant, noting that it was closing and would be inoperable by June 2015 (Plntff

10 Decl., par.10, Ex.-8). Two days later, on February 12, 2015, I informed Ms. Wilson I would consult

11 an attorney regarding the May Agreement and touch base in March 2015 to discuss further. Ms.

12 Wilson replied the same day indicating that she will modify the severance agreement by removing the

13 transition bonus out from the agreement which I felt that was unfair (Plntff Decl., par.10, Ex.-8). On

14 March 11, 2015, Ms. Wilson emailed me to check in and see if I was ready to continue negotiations

15 by discussing on the phone to finalize the agreement which I felt pressured (Plntff Decl., par.11, Ex.-

16 9).  I replied that I need more time but maybe in the next month as I needed to consult a few attorneys

17 to determine how the release in the severance agreement would affect my pending medical and

18 disability claims (Plntff Decl., par.11, Ex.-9). On April 7, 2015, I notified Ms. Wilson after consulting

19 several attorneys with general questions about severance agreements but not specific to the agreement

20 presented by Ms. Wilson, I would be able to discuss the severance agreement through the e-mail and

21 would provide my alteration requests in the coming week. Later that day, Ms. Wilson notified me that

22 while Columbus could not offer me the Transition Bonus of $15,374.99 as part of the severance

23 package, it would still honor the Severance Payment offer of $39,423.04 included in the May 2014

24 Agreement. On April 13, 2015, I stated that <u>I will not be able to accept the severance agreement as</u>

25 <u>presented</u> without modification to the terms (Plntff Decl., par.12, Ex.-10). On April 8, 2015, Ileana

26 Pacheco sent a notification to setup a <u>three people phone conference</u> with me (Plaintiff) on April 16,

27 2015). I felt <u>pressured to be forced</u> into a three people phone conference without asking my

28 permission and frustrated again as Ms. Wilson and Ileana Pacheco <u>ignored my previous notifications</u>

to Ms. Wilson that I wanted communication only through e-mail (Plntff Decl., par.13, Ex.-11). I didn't attend the phone conference and it got cancelled. On April 28, 2015 Ms. Wilson sent an e-mail and asked me ironically and improperly if I want to be terminated earlier than August 29, 2015(Plntff Decl., par.14, Ex.-12). On April 30, 2015, I was tired of severance agreement discussions achieving nothing due to Ms. Wilson's and Columbus Manufacturing Inc.'s increasing pressure, I notified Andrea Wilson and clearly stated to postpone all severance agreement discussions until my disability related medical issues are resolved which basically meant until my medical leave ends (Plntff Decl., par.15, Ex.-13).

On May 14, 2015, I have informed Columbus Manufacturing of my medical leave extension until November 11, 2015 per treating physician's recommendation. (Plntff Decl., par.16, Ex.-14). Therefore Columbus Manufacturing was aware of my health status by FMLA documents and form completed by my doctor. On May 28, 2015, I applied for 401K withdrawal from the company due to financial hardship caused by loss of income and high debt due to medical expenses on 2014 and 2015(Plntff Decl., par. 17, Ex.-15). Therefore, Columbus Manufacturing was aware of my financial hardship and economic status by the information given on withdrawal request form. Columbus Manufacturing, Inc. HR department made it so hard for me to withdraw funds from my 401K account so I gave up withdrawing money and felt more stress due to financial hardship caused by high debt. I had no problem before about withdrawing or receiving loan from my 401K accounts without submitting extensive documents for review at my former companies except Columbus Manufacturing, Inc. By mid-June 2015, the Defendant ignored my clear request again and contacted with me by mailing a modified severance agreement to my worker's comp attorney Mr. Ennis. The June 2015 Agreement included the Severance lump sum Payment of $39,423.04, but did not include the Transition Salary of over a year with benefits ($145K) and the Transition Bonus of $15,374.99 which was previously on May 2014 agreement(Plntff Decl., par.18, Ex-16). I got very upset with defendant's action ignoring my previous request and felt pressured again by defendant, thinking that Defendant was so determined to terminate me on or before August 29, 2015 by pushing another severance agreement in front of me. On June 21, 2015, I rejected the June 2015 Agreement under their terms. And presented my terms to Ms. Wilson in order to accept and sign a severance

agreement. My proposed terms were …(Plntff Decl., par.19, Ex-17). On July 06, 2015, I checked

with Ms. Wilson if she was interested to negotiate my proposed terms. Ms. Wilson replied on July 10,

2015 and <u>refused to negotiate my terms</u> by ignoring; instead she gave information about the facility

closure and reminded my termination date as August 29, 2015 to <u>create more stress and pressure</u> on

me (Plntff Decl., par.20, Ex-18). On July 11, 2015, I sent Ms. Wilson an email and confronted <u>her</u>

<u>misrepresentations and false statements about the facts</u> (Plntff Decl., par.20, Ex-18). Ms. Wilson then

e-mailed on Jul 21, 2015 and asked me to discuss the severance agreement on the <u>phone conference</u>

<u>with me by bringing more people to the severance agreement discussion</u> and added Paul

Wolfert(Director of QA) which I <u>felt very much pressured</u> by Ms. Wilson's act as Paul Wolfert was

my superior(Plntff Decl., par.21, Ex-19). During July, August 2015 Defendant e-mailed me and

Defendant <u>constantly reminded</u> of my termination date of August 29, 2015. After three previous

requests of communications to be done only through e-mail and <u>having been ignored again</u> by Ms.

Wilson; I e-mailed Ms. Wilson on July 29, 2015 about my <u>request again</u> regarding the severance

agreement discussions only to occur via email, not in person or on the phone (Plntff Decl., par.22,

Ex-20). On July 31, 2015, I emailed Ms. Wilson to remind my proposed terms in order to accept and

sign a severance agreement – a severance bonus of $55,000 and a year's salary of $145,000 and

additional sum of $300,000 for discrimination issues and other waivers except Workers Comp,

Disability, ERISA, and Unemployment Insurance (Plntff Decl., par.23, Ex-21). On August 25, 2015,

my California State Disability Benefit were expired after 52 weeks (one year) from the date that my

short-term medical leave started on June 2, 2014 for two weeks and long-term medical leave started

by August 30, 2014 and I have received my last benefit payment by EDD(California Employment

Disability) (Plntff Decl., par.24, Ex-22). On August 27, 2015, Ms. Wilson emailed me a revised

severance agreement as the final agreement (Plntff Decl., par.25, Ex-23).  The Final Agreement on

August 27, 2015 included the same Severance Lump Sum payment offered in both the May 2014

Agreement and the June 2015 Agreement ($39,423.04) and the same Transitional bonus of

$15,375.00 from May 2014 agreement but did not include the transitional income of a year's salary

$145,000 including benefits from May 2014 agreement (Plntff Decl., par.25, Ex-23). So called "Final

Agreement" presented on August 27, 2015; was worse than May 2014 agreement in monetary terms, therefore I rejected the Final agreement offer (Plntff Decl., par.26, Ex-14).

I felt pressured and frustrated by Ms. Wilson's opressive bargaining tactics; I e-mailed Ms. Wilson on August 28, 2015 to state my position clearly and to remind Ms. Wilson regarding the consequences of their actions by violating the Civil Laws that I will use my legal rights by complaining to EEOC and by filing a lawsuit (Plntff Decl., par.26, Ex-24). While I was on medical leave, I was terminated by Columbus Manufacturing on August 29, 2015 by receiving a termination letter from the company (Plntff Decl., par.27, Ex-25).

I e-mailed Ms. Wilson my updated proposed terms of around $465,000 payout on September 23, 2015(Plntff Decl., par.28, Ex-26). On October 5, 2015, Ms. Wilson notified me through e-mail and refused to negotiate my terms by ignoring as she just wanted to impose her own terms aggressively by telling me to sign the blank agreement and threatened to withdraw/hold payments if agreement not signed "*in order to receive the severance payments we have offered, you need to sign and return the revised agreement we sent you on August 27, 2015, by no later than October 12, 2015. Once I have received the executed agreement I can begin administering payments. We will need to reconnect so that I may verify your specified method of payment* (Plntff Decl., par. 29, Ex-27). Crunched by the economic pressure due to no monthly income and high debt; as a last chance before severance agreement expiration, On October 6, 2015, I e-mailed and made an updated proposal which was almost 60% lower in monetary terms than my previous proposals, I just proposed to receive $55,000 and a year salary with benefits ($145,000), the same monetary amount previously offered by Ms. Wilson on May 2014 which I had previously rejected (Plntff Decl., par.29, Ex-27). Ms. Wilson refused to negotiate my terms by ignoring my terms, knowing that I was in financial hardship due to my earlier application for 401K withdrawal request and expiration of my California State Disability benefit payments after 52 weeks from the date that my long-term medical leave started by August 30, 2014. Stressed by high debt and being terminated with no future possibility of working again at full capacity due to long term disability; responsibility of supporting a family of four people under the circumstances of a desperate financial situation, I sent an amended and first time signed agreement to Ms. Wilson on October 12, 2015, giving up all my financial

demands and my previous proposed terms in order to receive only $55,000 severance payment but with only handwritten amended terms in order to further protect my rights on Disability, Workers Comp and ERISA (Plntff Decl., par.30, Ex-28). On October 14, Ms. Wilson notified me that she refused to negotiate my terms and rejected the amended version of signed agreement "*Due to the nature of this legally binding document, we can only accept the original, unaltered clean copy* " and gave further assurances and promises for amended sections of the agreement regarding the waivers. Then Ms. Wilson pressured me again on the last section of this e-mail "*please do sign the original clean copy of this agreement in order to allow Columbus to execute your severance as per your request.* (Plntff Decl., par. 31, Ex-29). Ms. Wilson wanted to have the PTO (Paid Time Off- Holiday pay) check delivered to me with a delivery signature as a requirement of severance agreement, so on October 14, 2015, I advised Ms. Wilson to send the check to my workers comp attorney Mr. Ellis's office address since my workers comp deposition would be there on October 19 and October 20, 2015 (Plntff Decl., par.32, Ex-30).

On October 19, 2015, Columbus Manufacturing HR manager Ileana Pacheco delivered me the check with a blank severance agreement inside an envelope and also attended the workers comp deposition which lasted two full days. Under extreme financial pressure and having extreme back with leg pain, extremely tired from two full days of deposition and thinking about my family all night long; I (Plaintiff) had no other option but to sign a very unfair severance agreement and I involuntarily signed the agreement on October 20, 2015 under Columbus Manufacturing's (Defendant) imposed terms. On October 26, 2015, Ms. Wilson e-mailed and pressured me again "*Lastly, I will be happy to execute on your severance agreement; however, I needed you to sign a clean copy. I sent this note to you on October 15[th], at 9:22 a.m. See below email string highlighted in yellow. I will re-forward to you again with the clean copy of the severance. I cannot begin the execution of severance until you sign the clean copy.* "(Plntff Decl., par.34, Ex-31). On October 26, 2015 just a few minutes after the previous e-mail to me, Ms. Wilson e-mailed and pressured me again "*In reference to our email exchange this morning, here is the original email exchange, stating that we need a clean copy of your severance agreement in order to execute*" (Plntff Decl., par.34, Ex-31). On October 26, 2015 I informed Ms. Wilson that I mailed the signed agreement a few days ago. Later at

1 night on the same day, Ms. Wilson e-mailed and informed me that she received the signed agreement

2 (Plntff Decl., par.34, Ex-31).

3       My California State Disability Funds documents clearly show my bi-monthly income

4 payment was lasted 52 weeks and therefore ended by mid-August 2015(Plntff Decl., par.35, Ex-22).

5 My Chase bank statement records clearly show that around the time period of October 20, 2015 when

6 I involuntarily signed the agreement, I had only $163 in the bank account as seen on the November

7 2015 bank statement. After the agreement signed; I had funds received only from Defendant as seen

8 on the December 2015 bank statement (Plntff Decl., par.36, Ex-32). My US bank account statement

9 also clearly shows that the last day I received bi-weekly California SDI income; was August 25, 2015

10 in the amount of $460.73 through Bank of America EDD card account from California State

11 Disability Insurance Fund (Plntff Decl., par.37, Ex-33). California State Disability EDD documents

12 clearly show that my maximum benefit amount was $55,900 and issued benefit amount was $55,900,

13 weekly benefit amount was $1075 which the disability claim started on June 02, 2014 as a short-term

14 and continued on September 01, 2014 as long-term in the amount of $2150 as bi-weekly payments to

15 me (Plntff Decl., par.37, Ex-18). My medical expenses skyrocketed on 2014 and 2015 and exceeded

16 $30,000 which caused financial hardship and high debt as shown on my tax return copies from 2014

17 and 2015(Plntff Decl., par. 38, Ex-34). Being financially ruined with high debt arisen also from

18 medical expenses during medical leave; On September 2015, my credit score was 598, a very low

19 score due to high debt and poor credit. I also had bankruptcy on 2010 which was not an option to

20 consider on 2015 (Plntff Decl., par.39, Ex-35). My medical records, from 2015 around the time

21 period when I involuntarily signed the severance agreement, show my medical problems with the

22 medications that I was taking on September and October 2015 (Plntff Decl., par.40, Ex-36). During

23 October 2015, I took Oxycodone (Oxycontin) pills due to extreme back and leg pain. On August 20,

24 2015 evening, I took Oxycontin pill and I signed the Severance Agreement at night under influence.

25 Severe pain developed due to spinal injury at work and became chronic before and after spinal

26 surgery. Oxycontin has very strong side effects and if overdosed, it can be lethal. Oxycodone

27 (Oxycontin) is used to help relieve severe ongoing pain (such as due to cancer). Oxycodone belongs

28 to a class of drugs known as opioids (narcotic). It works in the brain to change how your body feels

and responds to pain (Plntff Decl., par. 40, Ex-37). <u>The Defendant was aware of my medical condition and medications during my medical leave due to medical records and their communication with my treating doctors.</u> After checking the California Employment Department website on 2016, I realized that Columbus Manufacturing (Defendant) violated the California Labor law by not reporting the facility closure, personnel layoff information and list of "laid off" employees on 2013, 2014 and 2015 to the California Employment Department-EDD(Plntff Decl., par.41, Ex-38) which is a requirement by State law for all California companies to report all closures and personnel lay-off information. Then I realized that <u>defendant misrepresented my termination reason as" a layoff due to facility closure".</u>

**B. Columbus Manufacturing Closes Its South San Francisco Facility and transfers all managers to new facility except Plaintiff.**

The Defendant claims that Plaintiff was terminated/laid-off as "a part of reduction in force due to reorganization of its business operations" decision. The Plaintiff disputes this claim due to the facts that Columbus Manufacturing (Defendant) violated the California Labor law by not reporting the facility closure, personnel layoff information and list of "laid off" employees on 2013, 2014 and 2015 to the California Employment Department-EDD (Plntff Decl., par.41, Ex-38) which is a requirement by State law for all California companies to report all closures and personnel lay-off information. Almost after 6 months of the confidential meeting, Andrea Wilson (Defendant) presented me a <u>severance agreement on May 2014</u>(Plntff Decl., par.4, Ex.-2) in order to terminate me on August 2015. I also have noticed on the last page of the agreement that I was the only manager from South San Francisco facility to be laid off and Defendant planned transferring all managerial employees to this new facility except me as the Plaintiff (Plntff Decl., par. 4, Ex.-2). The Defendant ironically called their action on me (Plaintiff) as a "Lay-off due to San Francisco facility closure". Per Severance Agreement, all South San Francisco facility managers (Plntff Decl., par. 5, Ex.-3), were all transferred with the same job titles to new Hayward facility during summer 2015. Columbus Manufacturing built and opened a new facility at Hayward, CA on 2015 with $28 million investment (Plntff Decl., par.6, Ex.-4). While I was on medical leave, Ms. Wilson planned to terminate me even before the South San Francisco closure date of June 2015 as the separation agreement document from

early 2015; clearly showed the termination date planned as March 01, 2015 and Ms. Wilson's signature date as February xx, 2015(Plntff. Decl., par.8, Ex.-6). I had also noticed that my employee network account was already terminated before May 01, 2015(Plntff. Decl., par.9, Ex.-7). In fact, these two documents clearly show that Defendant planned to terminate Plaintiff as soon as they could, did not even want to wait for closure of the facility, therefore the termination reason given by Defendant as "a closure of facility"; was an untruthful reason. Defendant fraudulently misrepresented the fact that Plaintiff's termination was due to facility closure.

### C. Plaintiff rejects all agreements presented by Defendant until October 20, 2015.
### Defendant bargains in bad faith and refuses to negotiate Plaintiff's terms.

Defendant presented severance agreements on May 2014, April 2015, June 2015, July 2015 and August 2015(Final Agreement) and including the February 2015 agreement discussion. Plaintiff rejected all agreements and including the Final Agreement on August 28, 2015. Almost after 6 months of the confidential meeting, Andrea Wilson (Defendant) presented me a severance agreement on May 2014(Plntff Decl., par.4, Ex.-2). May 2014 agreement offer included a Lump Sum of $39,423.04 with a bonus of $15,375.00 and a year's salary with benefits worth around $145,000. I rejected this Severance Agreement on June 19, 2014(Plntff Decl., par.7, Ex.-5). April 2015 agreement offer only included a Lump Sum of $39,423.04. On April 13, 2015, I stated that I will not be able to accept the severance agreement as presented without modification to the terms (Plntff Decl., par.12, Ex.-10). June 2015 agreement offer included a Lump Sum of $39,423.04. On June 21, 2015, I rejected the June 2015 Agreement under their terms. And presented my terms to Ms. Wilson in order to accept and sign a severance agreement. My proposed terms were …(Plntff Decl., par.19, Ex-17). Ms. Wilson replied on July 10, 2015 and refused to negotiate my terms by ignoring; instead she gave information about the facility closure and reminded my termination date as August 29, 2015 to create more stress and pressure on me (Plntff Decl., par.20, Ex-18). The Final Agreement on August 27, 2015 included the same Lump Sum Severance payment offered in both May 2014 Agreement and the June 2015 Agreement ($39,423.04) and the same Transitional bonus of $15,375.00 from May 2014 agreement but did not include the transitional income of a year's

salary $145,000 including benefits from May 2014 agreement. Therefore, so called "Final Agreement" presented by Defendant on August 27, 2015; was worse than May 2014 agreement in monetary terms, therefore I rejected the Final agreement offer (Plntff Decl., par.26, Ex-14). While I was on medical leave, I was terminated by Columbus Manufacturing on August 29, 2015 by receiving a termination letter from the company (Plntff Decl., par.27, Ex-25). The Defendant terminated me (Plaintiff) on August 29, 2015. On September 23, 2015, I e-mailed Ms. Wilson my proposed terms of around $465,000 payout (Plntff Decl., par.28, Ex-26). On October 5, 2015, Ms. Wilson notified me through e-mail and refused to negotiate my terms (Plntff Decl., par. 29, Ex-27). The Plaintiff presented his terms several times before October 2015 but Defendant refused to negotiate any of Plaintiff's terms and constantly pressured Plaintiff on their terms. The monetary amount that Plaintiff asked was: $500,000 and Defendant constantly offered $55,000 or less so there was no fair negotiation but only bargaining.

### D. Defendant uses Plaintiff's health weaknesses against him by presenting severance agreements during medical leave, ignores Plaintiff's requests to postpone negotiations

By August 30, 2014, Plaintiff took a long term medical leave of absence due to immediate treatment needs and disability arisen from a workplace injury. Defendant improperly presented agreements, during Plaintiff's medical leave; when Plaintiff's physical and mental health was weakened due to disability and effected by strong side effects from medications. On February 4, 2015, while Plaintiff was on medical leave, Ms. Wilson (Defendant) inquired if Plaintiff was able to meet in person or on the phone to discuss the agreement, Plaintiff replied to communicate through e-mail (Plntff Decl., par.10, Ex.-8). But, on February 10, 2015, Ms. Wilson emailed again insisting to talk on the phone to discuss the severance agreement (Plntff Decl., par.10, Ex.-8). On March 11, 2015, Ms. Wilson emailed me to check in and see if I was ready to continue negotiations by discussing on the phone to finalize the agreement which I felt pressured (Plntff Decl., par.11, Ex.-9). I replied that I need more time (Plntff Decl., par.11, Ex.-9). On April 8, 2015, Ileana Pacheco sent a notification to setup a three people phone conference with Plaintiff on April 16, 2015. I felt pressured to be forced into a three people phone conference without asking my permission and frustrated again as Ms. Wilson and Ileana Pacheco ignored my previous notifications to Ms. Wilson that I wanted

communication only through e-mail (Plntff Decl., par.13, Ex.-11).  On April 28, 2015 Ms. Wilson

sent an e-mail and asked me ironically and <u>improperly</u> if I want to be terminated earlier than August

29, 2015(Plntff Decl., par.14, Ex.-12). On April 30, 2015, I was tired of severance agreement

discussions achieving nothing due to Ms. Wilson's and Columbus Manufacturing Inc.'s <u>increasing</u>

<u>pressure,</u> I notified Andrea Wilson and <u>clearly stated to postpone all severance agreement discussions</u>

<u>until my disability related medical issues are resolved </u>which basically meant until my medical leave

ends (Plntff Decl., par.15, Ex.-13). On May 14, 2015, I have informed Columbus Manufacturing of

my medical leave extension until November 11, 2015 per treating physician's recommendation.

(Plntff Decl., par.16, Ex.-14).  Therefore Columbus Manufacturing was aware of my <u>health status by</u>

<u>FMLA documents</u> and form completed by my doctor. By mid-June 2015, the Defendant <u>ignored my</u>

<u>clear request again</u> and contacted with me by mailing a modified severance agreement to my worker's

comp attorney Mr. Ennis. I got very upset with defendant's action ignoring my previous request and

<u>felt pressured again</u> by defendant, thinking that Defendant was so determined to terminate me on or

before August 29, 2015 by pushing another severance agreement in front of me during my medical

leave. Ms. Wilson then e-mailed on Jul 21, 2015 and asked me to discuss the severance agreement on

the <u>phone conference with me by bringing more people to the severance agreement discussion</u> and

added Paul Wolfert(Director of QA) which I <u>felt very much pressured </u>by Ms. Wilson's act as Paul

Wolfert was my superior(Plntff Decl., par.21, Ex-19). During July, August 2015 Defendant e-mailed

me and Defendant <u>constantly reminded</u> of my termination date of August 29, 2015. After three

previous requests of communications to be done only through e-mail and <u>having been ignored again</u>

by Ms. Wilson; I e-mailed Ms. Wilson on July 29, 2015 about my <u>request again</u> regarding the

severance agreement discussions only to occur via email, not in person or on the phone (Plntff Decl.,

par.22, Ex-20). <u>While I was on medical leave, I was terminated by Columbus Manufacturing on</u>

<u>August 29, 2015 by receiving a termination letter from the company (Plntff Decl., par.27, Ex-25).</u>

<u>The Defendant terminated me (Plaintiff) on August 29, 2015.</u> On October 5, 2015, Ms. Wilson    e-

mail and <u>refused to negotiate my terms</u> by ignoring as she just wanted to <u>impose her own terms</u>

<u>aggressively by telling me to sign the blank agreement and threatened to withdraw/hold payments if</u>

<u>agreement not signed</u> "*in order to receive the severance payments we have offered, you need to sign*

1  *and return the revised agreement we sent you on August 27, 2015, by no later than October 12,*

2  *2015. Once I have received the executed agreement I can begin administering payments. We will*

3  *need to reconnect so that I may verify your specified method of payment* (Plntff Decl., par. 29, Ex-

4  27). On October 14, Ms. Wilson as Chief People Officer (highest authority) <u>excessively pressured me</u>

5  <u>by overpersuasion on the last section of this e-mail "*please do sign the original clean copy of this*</u>

6  <u>*agreement in order to allow Columbus to execute your severance.*</u> (Plntff Decl., par. 31, Ex-29). Ms.

7  Wilson wanted to have the PTO (Paid Time Off- Holiday pay) check delivered to me with a delivery

8  signature, so on October 14, 2015, I advised Ms. Wilson to send the check to my workers comp

9  attorney Mr. Ellis's office address since my workers comp deposition would be there on October 19

10  and October 20, 2015 (Plntff Decl., par.32, Ex-30).

11  On October 19, 2015, <u>Columbus Manufacturing HR manager Ileana Pacheco delivered me</u> the check

12  with <u>a blank severance agreement inside an envelope(oppressive act)</u> and also attended the workers

13  comp deposition which lasted two full days. <u>Under extreme financial pressure and undue influence</u>

14  <u>and under extreme health weakness during medical leave, having extreme back with leg pain,</u>

15  <u>extremely tired from two full days of deposition and thinking about my family all night long; I</u>

16  <u>(Plaintiff) had no other option but to sign a very unfair severance agreement and I involuntarily</u>

17  <u>signed the agreement on October 20, 2015 under Columbus Manufacturing's (Defendant) imposed</u>

18  <u>terms.</u> On October 26, 2015, Ms. Wilson e-mailed and <u>harassed me oppressively "*I needed you to*</u>

19  <u>*sign a clean copy. I will re-forward to you again with the clean copy of the severance.*</u> "(Plntff

20  Decl., par.34, Ex-31). On October 26, 2015 just a few minutes after the previous e-mail to me, Ms.

21  Wilson e-mailed and <u>harassed me more</u> "*In reference to our email exchange this morning, here is the*

22  *original email exchange, stating that <u>we need a clean copy of your severance agreement in order to</u>*

23  *<u>execute</u>*" (Plntff Decl., par.34, Ex-31).

24  On October 26, 2015 I informed Ms. Wilson that I mailed the signed agreement a few days ago.

25  My medical records, from 2015 around the time period when I involuntarily signed the severance

26  agreement, show my medical problems with the medications that I was taking on September and

27  October 2015 (Plntff Decl., par.40, Ex-36). <u>On August 20, 2015 evening, I took Oxycontin pill and I</u>

28  <u>signed the Severance Agreement at night under influence. It works in the brain to change how your</u>

body feels and responds to pain (Plntff Decl., par. 40, Ex-37). The Defendant was aware of my medical condition and medications during my medical leave due to medical records and their communication with my treating doctors.

    **E. Plaintiff involuntarily signs Final Severance agreement in October 2015 under economic duress, undue influence, and misrepresentation (fraud).**

    On August 27, 2015, Ms. Wilson emailed me a final agreement (Plntff Decl., par.25, Ex-23). The Final Agreement on August 27, 2015 included the same Severance Lump Sum payment offered in both the May 2014 Agreement and the June 2015 Agreement ($39,423.04) and the same Transitional bonus of $15,375.00 from May 2014 agreement but did not include the transitional income of a year's salary $145,000 including benefits from May 2014 agreement (Plntff Decl., par.25, Ex-23). So called "Final Agreement" presented on August 27, 2015; was worse than May 2014 agreement in monetary terms, therefore I rejected the Final agreement offer (Plntff Decl., par.26, Ex-14). While I was on medical leave, I was terminated by Columbus Manufacturing on August 29, 2015 by receiving a termination letter from the company (Plntff Decl., par.27, Ex-25). The Defendant terminated me (Plaintiff) on August 29, 2015. On October 5, 2015, Ms. Wilson notified me through e-mail and refused to negotiate my terms by ignoring as she just wanted to impose her own terms aggressively by telling me to sign the blank agreement and threatened to withdraw/hold payments if agreement not signed "*in order to receive the severance payments we have offered, you need to sign and return the revised agreement we sent you on August 27, 2015, by no later than October 12, 2015. Once I have received the executed agreement I can begin administering payments. We will need to reconnect so that I may verify your specified method of payment* (Plntff Decl., par. 29, Ex-27). Ms. Wilson refused to negotiate my terms by ignoring my terms, knowing that I was in financial hardship due to my earlier application for 401K withdrawal request and expiration of my California State Disability benefit payments after 52 weeks from the date that my long-term medical leave started by August 30, 2014. Stressed by high debt and being terminated with no future possibility of working again at full capacity due to long term disability; responsibility of supporting a family of four people under the circumstances of a desperate financial situation, I sent an amended and first time signed agreement to Ms. Wilson on October 12, 2015,

(Plntff Decl., par.30, Ex-28). On October 14, Ms. Wilson notified me that she refused to negotiate my terms and rejected the amended version of signed agreement "*Due to the nature of this legally binding document, we can only accept the original, unaltered clean copy* " and gave further assurances and promises for amended sections of the agreement regarding the waivers. Then Ms. Wilson pressured me again on the last section of this e-mail "*please do sign the original clean copy of this agreement in order to allow Columbus to execute your severance as per your request.* (Plntff Decl., par. 31, Ex-29). On October 14, 2015, I advised Ms. Wilson to send the PTO(Paid Time off-Holiday Pay) check to my workers comp attorney Mr. Ellis's office address since my workers comp deposition would be there on October 19 and October 20, 2015 (Plntff Decl., par.32, Ex-30). On October 19, 2015, Columbus Manufacturing HR manager Ileana Pacheco delivered me the check with a blank severance agreement inside an envelope and also attended the workers comp deposition which lasted two full days. Under extreme financial pressure and undue influence and under extreme health weakness during medical leave, having extreme back with leg pain, extremely tired from two full days of deposition and thinking about my family all night long; I (Plaintiff) had no other option but to sign a very unfair severance agreement and I involuntarily signed the agreement on October 20, 2015 under Columbus Manufacturing's (Defendant) imposed terms. On October 26, 2015, Ms. Wilson e-mailed and pressured me again "*I needed you to sign a clean copy. I will re-forward to you again with the clean copy of the severance.* "(Plntff Decl., par.34, Ex-31). On October 26, 2015 just a few minutes after the previous e-mail to me, Ms. Wilson e-mailed and pressured me again "*In reference to our email exchange this morning, here is the original email exchange, stating that we need a clean copy of your severance agreement in order to execute*" (Plntff Decl., par.34, Ex-31). On October 26, 2015 I informed Ms. Wilson that I mailed the signed agreement a few days ago. My California State Disability Funds documents clearly show my bi-monthly income payment was lasted 52 weeks and therefore ended by mid-August 2015(Plntff Decl., par.35, Ex-22). My Chase bank statement records clearly show that around the time period of October 20, 2015 when I involuntarily signed the agreement, I had only $163 in the bank account as seen on the November 2015 bank statement. After the agreement signed; I had funds received only from Defendant as seen on the December 2015 bank statement (Plntff Decl., par.36, Ex-32). My US bank account statement

also clearly shows that the last day I received bi-weekly California SDI income; was August 25, 2015 in the amount of $460.73 through Bank of America EDD card account from California State Disability Insurance Fund (Plntff Decl., par.37, Ex-33). California State Disability EDD documents clearly show that my maximum benefit amount was $55,900 and issued benefit amount was $55,900, weekly benefit amount was $1075 which the disability claim started on June 02, 2014 as a short-term and continued on September 01, 2014 as long-term in the amount of $2150 as bi-weekly payments to me (Plntff Decl., par.37, Ex-18). My medical expenses skyrocketed on 2014 and 2015 and exceeded $30,000 which caused financial hardship and high debt as shown on my tax return copies from 2014 and 2015(Plntff Decl., par. 38, Ex-34). Being financially ruined with high debt arisen also from medical expenses during medical leave; On September 2015, my credit score hit 598, a very low score due to high debt and poor credit. I also had bankruptcy on 2010 which was not an option to consider on 2015 (Plntff Decl., par.39, Ex-35). After checking the California Employment Department website on 2016, I realized that Columbus Manufacturing (Defendant) violated the California Labor law by not reporting the facility closure, personnel layoff information and list of "laid off" employees on 2013, 2014 and 2015 to the California Employment Department-EDD(Plntff Decl., par.41, Ex-38) which is a requirement by State law for all California companies to report all closures and personnel lay-off information. Based on facts, I have proven that defendant misrepresented(fraud) my termination reason as" a layoff due to facility closure".

1

### III.  ARGUMENT

2

#### A.  Legal Standard

3       The party moving for summary judgment has the burden of establishing the absence of a

4   genuine dispute of material fact on the issue to be decided.  *Celotex Corp. v. Catrett,* 477 U.S. 317,

5   323 (1986). To avoid summary judgment, the party opposing must identify the specific, material facts

6   that are genuinely disputed. *Makaeff v. Trump Univ., LLC,* 736 F.3d 1180, 1189 (9th Cir. 2013). The

7   court must view the evidence in the light most favorable to the party opposing the motion and draw

8   all reasonable inferences in that party's favor. *Clicks Billiards Inc. v. Sixshooters Inc.,* 251 F.3d 1252,

9   1257 (9th Cir. 2001). "Where conflicting inferences may be drawn from the facts, the case must go to

10  the jury." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.,* 752 F.3d 807, 818 (9th Cir. 2014)

11  (citation and quotation marks omitted). The motion will granted only if the undisputed evidence and

12  inferences show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.

13  56(a).

14

#### B.  "Ratification" Does Not Bar Plaintiff I From Challenging the Enforceability of the

15      Agreement

16      Defendant seems to suggest that Plaintiff forfeited any right to pursue his underlying claims

17  because he did not, separate from the lawsuit, seek to rescind the agreement and return the

18  consideration. (Dkt. 59, Memo. at 11-12.) There is no such rule. Indeed, California law specifically

19  provides otherwise:

20              . . . A party who has received benefits by reason of a contract that is
                subject to rescission and who in an action or proceeding seeks relief
21              based upon rescission shall not be denied relief because of a delay in
                restoring or in tendering restoration of such benefits before judgment
22              unless such delay has been substantially prejudicial to the other party;
                but the court may make a tender of restoration a condition of its
23              judgment.

24  Cal. Civ. Code § 1693.

25      Not mentioning this directly applicable statute in its brief, Defendant argues that receipt of

26  consideration "ratifies" the agreement. If this were correct, however, section 1693 would be

27  meaningless. Moreover, neither of the cases cited by Defendant provides any authority for its

28  argument. First, *Oubre v. Entergy Operations, Inc.* merely summarizes an employer's argument that

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

delay in tender for purposes of rescission can constitute ratification or create an estoppel (under non-California authority). 522 U.S. 422, 426 (1998). The Supreme Court then concludes that "[t]hese general rules may not be as unified as the employer asserts. [ ] And in equity, a person suing to rescind a contract, as a rule, is not required to restore the consideration at the very outset of the litigation." *Id.* (citations omitted). Thus, rather than support Defendant's argument, *Oubre* confirms that California law follows equitable principles.

Nor does *Alvardo Community Hospital v. Sup. Court*, which addresses ratification when an agent enters into an unauthorized contract, support Defendant's argument. 173 Cal. App. 3d 476, 480-83 (1985). *Alvarado* has nothing to do with the present situation. Defendant slightly misquotes this case, but, more critically, ignores that the case relied on agency law. The case discusses ratification of a third-party agent's conduct, repeatedly citing the Restatement of Agency, and otherwise citing cases that, like *Alvarado* itself, involve a client's recourse for an attorney's unauthorized settlement. *Id.* Defendant does not attempt to explain, and there is no reason, why agency law ratification principles should be grafted onto this not uncommon contract situation that is expressly contemplated by California statute.

Defendant has not and cannot establish that Plaintiff is barred from challenging the enforceability of the severance agreement. This Court, in equity and under California statutory law, is certainly able to assess the enforceability of the agreement without "mak[ing] a mockery of centuries of [Defendant's unidentified] contract precedent." (*Cf.* Dkt. 59, Memo. at 12:16-18.)

### C. Plaintiff's Consent Was Given Under Economic Duress

The Plaintiff argues that the final severance agreement; is invalid and unenforceable due to the facts that it was signed under economic duress additional to undue influence, misrepresentation (fraud). Under California Law, economic duress can serve as basis for invaliding a release or waiver. *Johnson v. Int'l Bus. Machs.,* 891 F. Supp. 522,528 (N.D. Cal 1995)(quoting *U.S. for Use and Benefit of Reed v. Callahan,* 885 F.2d 1180, 1184(9thCir. 1989). The defendant's knowledge of the Plaintiff's "economic exigencies" is an element of economic duress. Accordingly Columbus Manufacturing's records and California State records demonstrating knowledge of Plaintiff's income through the

1  programs provided and processed by the Defendant as his former employer; are facts that prove the

2  economic duress. Furthermore Plaintiff's additional financial records also prove that.

3  Plaintiff claims that defendants caused Economic Duress on him by work injury, low income during

4  medical leave, high medical expenses, financial hardship, and no monthly income after termination of

5  his employment.

6  Based on the criteria below, Plaintiff satisfies all of the following (Ref: CACI No. 333)

7  (1) Defendants engaged in sufficiently coercive wrongful acts; Defendant committed wrongful acts of

8  termination during medical leave/disability(Plntff Decl., par.27, Ex-25), caused financial hardship

9  and excessive pressure with coercive acts on Plaintiff into consenting to the contract under Defendant

10  terms and misrepresentation of Plaintiff's termination reason due to closure (assertion of a claim

11  known to be false)( Plntff Decl., par.41, Ex-38), (Plntff Decl., par.8, Ex-6), threatening the Plaintiff to

12  withhold the severance payments unless agreement is signed; are wrongful conducts. " '*Instead, the*

13  *doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to*

14  *cause a reasonably prudent person faced with no reasonable alternative to succumb to the*

15  *perpetrator's pressure. . . . The assertion of a claim known to be false or a bad faith threat to breach*

16  *a contract or to withhold a payment may constitute a wrongful act for purposes of the economic*

17  *duress doctrine. . . . Further, a reasonably prudent person subject to such an act may have no*

18  *reasonable alternative but to succumb when the only other alternative is bankruptcy or financial*

19  *ruin. . . .* ' " (Chan, supra, 188 Cal.App.4th at pp. 1173–1174.)

20  (2) A reasonably prudent person in Plaintiff's economic position would have had no reasonable

21  alternative but to succumb to Defendants' coercion; A reasonable person in Plaintiff's position would

22  have believed that he or she had no reasonable alternative except to consent to the contract; as

23  Plaintiff was in financial hardship arisen from low income (Plntff Decl., par. 6)

24  (3) Defendants knew of Plaintiff's economic vulnerability through company records and California

25  State Disability acknowledgment; (Plntff Decl., par. 17, Ex.-15), (Plntff Decl., par.37, Ex-33)

26  (4) Defendants' coercive wrongful act actually caused or induced Plaintiff to endorse the severance

27  agreement. Wrongful termination of Plaintiff's employment during medical leave and excessive

28

1  oppressive pressure on the Plaintiff until he signs the agreement, threatening the Plaintiff to withhold
2  the severance payments unless agreement is signed; are wrongful conducts
3  There is no doubt that Defendant caused extreme damages to Plaintiff financially, medically (physical
4  and mental) and caused him to go through the most difficult time in his entire life. Defendant also has
5  made false statements, has built their defense on false statements and suggesting options to Plaintiff
6  beyond the limits of insanity. The defendant, not only caused Plaintiff's medical leave due to work
7  injury by company's negligence, but also saved money around $145,000 by not paying Plaintiff's one
8  year of salary when Plaintiff was in medical leave and couldn't work during transitional time. *"On
9  the other hand, there is an increasing recognition of the law's role in correcting inequitable or
10  unequal exchanges between parties of disproportionate bargaining power and a greater willingness
11  to not enforce agreements which were entered into under coercive circumstances.'* " (Rich &
12  Whillock, Inc., supra, 157 Cal.App.3d at p. 1158.). The monetary terms; were simply Defendant's
13  terms; which were imposed on Plaintiff under coercive circumstances. Defendant with significant
14  bargaining power; refused to negotiate Plaintiff's terms. Contrary to Defendant's claim of suggesting
15  the plaintiff simply to sue the defendant on 2015; was not possible, In fact, Plaintiff had to go through
16  EEOC process first before suing, which is a requirement by California law and that's what he did.
17  Therefore Defendant's reasoning and claims are totally invalid and are far from reality. Defendants
18  also stated in their argument that *"Plaintiff's income before and after the execution of the Final
19  Agreement has been derived mainly from monthly disability benefits. is still receiving such benefits.
20  Plaintiff's source of income would be no different today even if he were still employed by Columbus"*.
21  This is a false statement by Defendant making assumptions based on untruthful facts. In fact, Plaintiff
22  was receiving Disability income from California State Disability Funds for 52 weeks until the end of
23  August 2015; he had no monthly income on September and October 2015 when he signed the
24  agreement. Now, he receives Social Security Disability benefits as monthly income but no California
25  State Disability Income. The Defendant shouldn't combine and try to show these two different things
26  together as they are different benefits and didn't exist at the same time. Furthermore, due to
27  Defendant's wrongful acts and unethical aggression against Plaintiff, Plaintiff couldn't receive
28  benefits from Workers Comp during his medical leave arisen from work injury which would help his

financial hardship during his medical leave. Plaintiff's Workers Comp legal case against Defendant; still continues after 4 years of work injury which is outrageous. The Defendant also suggests and argues that Plaintiff should look for another job after termination on August 29, 2015. This suggestion is beyond limits of insanity as Plaintiff was on medical leave until the end of 2015, on long term disability arisen from work injury due to Defendant's negligence so he couldn't be able to work. Defendant also claims that telling "to pursue legal action" by Plaintiff was a threat. Pursuing a legal action is "a right" for all people and is not a threat. But, in fact, telling excessively about terminating an employee and termination act; is surely a threat and Defendant surely used that threat and committed a wrongful termination action. Defendant's termination act due to facility closure as a fraudulent reason; was also ruthless.

The final severance agreement amount was $55,000. Whether $40,000 offered or, not even more than $15,000, by the agreement, the Plaintiff would still be involuntarily signing the agreement as he was under economic duress and needed money to pay his debts and support family. Plaintiff would only be signing an agreement voluntarily if his terms were negotiated fairly. Furthermore, Attorney Muller advised Plaintiff not to sign a severance agreement unless Plaintiff is satisfied with the monetary terms since a wrongful termination took place and discrimination occurred during his employment and since Plaintiff would be releasing his rights. Plaintiff surely was not satisfied with the terms but he had no other option and he was under extreme pressure at that time. Based on the facts and argument, Plaintiff has proven all of the above; economic duress was a factor to consent therefore no contract was created and agreement is invalid.

### D. Plaintiff's Consent Was Procured by Undue Influence

Plaintiff claims that defendants subjected Plaintiff to undue influence therefore no contract was created because Plaintiff was excessively pressured, harassed oppressively with over-persuasion by Defendant into consenting to the contract. Plaintiff satisfies all of the following based on facts, therefore no contract was created.

Defendant used (Ref: CACI No. 334)

a.   Employer/employee relationship of trust and confidence as an authority over Plaintiff

b.  Plaintiff's weakness of mind was a fact and Defendant excessively pressured Plaintiff when Plaintiff's state of health was weakened, physically and mentally, during medical leave due to disability and medication side effects.

c.  Plaintiff's financial needs or distress due to financial hardship, low income during medical leave and no monthly income when he signed the agreement, termination.

d.  Defendant induced or pressured Plaintiff into consenting to the contract; Defendant excessively pressured Plaintiff during medical leave and ignored his requests to postpone agreement discussions until medical leave ends. Defendant pressured Plaintiff at inappropriate times and in improper ways, had setup three people phone conference without permission, attempted to bring Plaintiff's superior to agreement discussions to increase pressure to Plaintiff based on facts.

2.  Plaintiff would not otherwise have consented to the contract. Plaintiff wouldn't consent to agreement if these conditions did not exist as Defendant caused extensive damages on Plaintiff by a work injury causing long-term disability, by wrongful termination, by employment discrimination. All these damages worth much more than he received from Defendant.

### E.  The Agreement is Invalid Due to Fraud

The Defendant claims that Plaintiff was terminated/laid-off as "a part of reduction in force due to reorganization of its business operations" decision. The Plaintiff disputes due to the facts that Columbus Manufacturing (Defendant) violated the California Labor law by not reporting the facility closure, personnel layoff information and list of "laid off" employees on 2013, 2014 and 2015 to the California Employment Department-EDD (Plntff Decl., par.41, Ex-38) which is a requirement by State law for all California companies to report all closures and personnel lay-off information. Almost after 6 months of the confidential meeting, Andrea Wilson (Defendant) presented me a severance agreement on May 2014(Plntff Decl., par.4, Ex.-2) in order to terminate me on August 2015. I also have noticed on the last page of the agreement that I was the only manager from South San Francisco facility to be laid off and Defendant planned transferring all managerial employees to this new facility except me as the Plaintiff (Plntff Decl., par. 4, Ex.-2). The Defendant ironically called their action on me (Plaintiff) as a "Lay-off due to San Francisco facility closure". Per Severance Agreement, all South San Francisco facility managers (Plntff Decl., par. 5, Ex.-3), were all

transferred with the same job titles to new Hayward facility during summer 2015. Columbus

Manufacturing built and opened a new facility at Hayward, CA on 2015 with $28 million investment

(Plntff Decl., par.6, Ex.-4). While I was on medical leave, Ms. Wilson planned to terminate me even

before the South San Francisco closure date of June 2015 as the separation agreement document from

early 2015; clearly showed the termination date planned as March 01, 2015 and Ms. Wilson's

signature date as February xx, 2015(Plntff. Decl., par.8, Ex.-6). I had also noticed that my employee

network account was already terminated before May 01, 2015(Plntff. Decl., par.9, Ex.-7). In fact,

these two documents clearly show that Defendant planned to terminate Plaintiff as soon as they

could, did not even want to wait for closure of the facility, therefore the termination reason given by

Defendant as "a closure of facility"; was an untruthful reason. Defendant fraudulently represented the

false fact of Plaintiff's termination reason.

This agreement should be invalidated by court and should be unenforceable in whole.

### V. OBJECTIONS TO EVIDENCE

| | Evidence *[Identify the declaration, as well as the paragraph number, page and line number, and/or exhibit number to which you are objecting]* | Objection *[Check box; list any other legal objection]* |
|---|---|---|
| 1 | Plaintiff's deposition documents were updated with an errata sheet signed by Plaintiff and notarized. But Defendant submitted the motion with the old deposition documents | ☐ Lack of personal knowledge<br>☐ Hearsay<br>☐ Improper opinion<br>✓ Old deposition documents |

### IV.    CONCLUSION

For the reasons above, I (Plaintiff) respectfully request that the Court deny Defendant's

Motion for Summary Judgment by invalidating the Severance Agreement in whole.


Respectfully submitted,

Date: FEBRUARY 22, 2018    Sign Name: _____

Print Name:    HAKAN    KIP    KENNEDY

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO.:  17-cv-03379-EMC